[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court in connection with custody and visitation issues concerning the parties minor child, Leonard Ezekiel Thomas III born August 25, 1992. The parties appeared through counsel on November 14, 2000, February 13, 2001 and August 7, 2001 and offered testimony and introduced documentary evidence.
The following procedural history is relevant. The plaintiff, by summons and complaint dated December 5, 1995, sought to have her marriage to the defendant dissolved. On July 25, 1996 the court (McWeeny, J.) entered judgment dissolving the marriage and ordered that the parties have joint custody with physical custody awarded to the plaintiff and the defendant having reasonable visitation. Thereafter followed numerous motions filed by both parties in connection with visitation, custody and support issues. On September 16, 1998, the court (Bishop, J.) ordered specific visitation for the defendant, including overnight. On September 9, 1999 the same court again addressed visitation issues and referred the custody and visitation issues to the Family Relations Division for mediation and/or a full custody evaluation. This court addressed a limited number of matters on November 30, 1999 and July 12, 2000. At the conclusion of the August 7, 2001 hearing the court issued interim orders pending a decision on the issues.
The court, having reviewed the testimony or the parties and their witnesses, the exhibits and post-trial proposed orders makes the following findings of fact.
The defendant is 36 years of age, in good health and employed full time. As a result of previous orders of the court he enjoys visitation with his son 6 out of every 14 nights and evenly shares the daytime. For the past 7 years he has lived in the same 2 1/2 family house. He lives with his fiancee and their 6 year old daughter. His son and daughter get along very well. At his expense the defendant has paid for his son to attend a private grammar school. The defendant is the disciplinarian type and in the past has had a problem with his anger. He has a loving and caring extended family. CT Page 1125
The plaintiff has not remarried but is in a serious relationship which in August of 2000 resulted in the birth of twins. She has had difficulty with the twins because of their initial health issues.
She differs from the defendant in how a child should be raised.
Both parents are fit to raise their son. The defendant has addressed his anger issues. The testimony of the parties and their witnesses persuade the court that a shared parenting arrangement is in the child's best interests, especially in view of the work schedules of the parties.
The following orders shall enter:
CUSTODY
The father and mother shall have joint legal custody of the minor child. Both parties shall share the day-to-day responsibility for the child's care, education, guidance, well being and upbringing in accordance with the terms of this parenting plan.
DEFINITION OF CUSTODY
Each parent shall continue having an equal role in providing a sound moral, social, economic and educational environment for the child. The parties shall exert their best efforts to work cooperatively in developing future plans consistent with the best interests of the child and in amicably resolving such disputes as may arise.
MAJOR DECISIONS
Major decision, which shall be defined as those key issues affecting the child's health, growth and development, course of study, extent of travel away from home, choice of camp, major medical treatment, lessons, psychotherapy, psychoanalysis or like treatment, part or full time employment, purchase or operation of a motor vehicle, specially hazardous sports or activities, contraception and sex education, or religious upbringing, non-emergency health care, significant changes in social environment and decisions relating to actual or potential litigation involving the child directly or as beneficiary, other than custody, shall be considered and discussed in depth by and agreed to by both parties.
In accepting the broad grant of privileges conferred by this joint custodial arrangement, the parties specifically recognize that these powers shall not be exercised for the purpose of frustrating. denying or controlling in any manner the lifestyle of the other parent. The parties CT Page 1126 shall exert their best efforts to work cooperatively in developing future plans consistent with the best interests of the child and in amicably resolving such disputes as may arise.
Neither party shall do anything which may estrange the child from the other nor inure the opinion of the child as to their mother or father, nor act in such a way as to hamper the free and natural development of the child's love and respect for the other party.
ROUTINE DECISIONS
Day-to-day decisions of a routine nature, including but not limited to bedtime, homework, health care, and day-to-day school, social and athletic activities the child is actually staying. The parents shall endeavor to cooperate and establish a mutually agreeable policy regarding such day-to-day decisions, but the primary responsibility for routine decisions shall rest with the parent with whom the child is then staying.
PARENTING SCHEDULE
Each party shall have full, liberal, and flexible rights of reasonable access to and parenting responsibility for the child, which shall include, but not be limited to free access to and communication with the child and reasonable opportunities to spend time with the child and to have the child spend time with him or her, including overnights and reasonable periods during the school vacations.
Unless the parties agree otherwise, commencing the first week of school, 2001, the father will care for the child from Sunday evening at 6:00 p.m. through the commencement of school on Friday morning. Father will pick up his son from school on Friday afternoon and deliver the child to mother's home no later than 4:00 p.m., provided mother or another responsible adult is home to receive the child. Mother shall then parent the child every weekend and shall transport the child back to father's home on Sunday evening 6:00 p.m. Additionally, mother shall have the right to have her son with her every Wednesday during the week from after school until 7:00 p.m. when she shall return the youngster to father's home.
The father and mother shall each have the option of having the child for one of the school vacation weeks, President's Birthday week or Spring vacation week. The parties will decide which week they prefer on a yearly basis. The mother shall have first choice in even numbered years and the father shall have first choice in odd numbered years. By agreement, the parents may also split the vacation weeks. CT Page 1127
Easter Sunday will be alternated with the father having the child in even numbered years.
The father shall have the child on Father's Day and his birthday.
The mother shall have the child on Mother's Day and her birthday.
Memorial Day weekend from after school Friday until 6:00 p.m. Monday will be alternated, with mother having the 2002 holiday weekend.
The child's birthday will be alternated, with mother having the 2001 birthday.
Independence Day will be alternated, with father having the 2002 holiday.
Each party may have one week of summer vacation with the child from 10:00 a.m. on Monday to 10:00 a.m. on the following Monday. Each parent shall give the other written notice no later than April 15th of each year as to which week they intend to take for summer vacation.
Labor Day weekend from after school Friday until 6:00 p.m. Monday will be alternated, with father having the 2001 holiday.
Columbus Day weekend from after school Friday until 6:00 p.m. Monday will be alternated, with mother having the 2001 holiday.
Thanksgiving weekend will be alternated and divided. In odd numbered years the father shall have the child on Thanksgiving day and until Friday at 10:00 a.m., when he shall transport the child to mother's home, and mother shall have the child for the balance of the weekend, and she shall transport the child back to father's home by 6:00 p.m. on Sunday. The process shall reverse itself in even numbered years.
The Christmas holiday will be alternated and divided. The father shall have the child on Christmas eve and overnight until 12:00 noon on Christmas day on odd numbered years and the mother shall have the child on Christmas eve and overnight until 12:00 noon on Christmas day on even numbered years.
Christmas school vacation will be divided between the parents, with each having an equal share of the days.
All holiday and vacation time shall preempt the regular parenting schedule so that if one parent's holiday falls on the other parent's weekend, the parent having the holiday that year will have the child for CT Page 1128 that weekend.
Notwithstanding the above referenced schedule, the parties agree that all referenced weekends may be split or the schedule otherwise altered by mutual agreement to meet the best interests of all parties.
The parties shall use their best efforts to adjust the visitation schedule upon reasonable request and notice from the other party, keeping in mind the best interest of the child. In the event that a dispute arises as to the visitation schedule or other decision-making areas, the parties shall attempt to resolve such disagreement by mutual agreement. If no agreement is achieved, the issue shall first be submitted to a third party agreed upon by the parties.
INFORMATION AS TO THE CHILD
Each of the parties agrees to keep the other informed of the whereabouts of the child whenever he is out of state overnight. The parents will use reasonable efforts to keep each other informed about the child's social plans and activities so that the child can be reached by either parent in the event of an emergency.
In the event of the illness or personal injury of the child, the first party to learn of such illness or injury shall notify the other immediately, and each party shall keep the other reasonably informed of the whereabouts and condition of the child. For the purpose of this paragraph, the word "illness" shall mean any sickness or ailment which requires the services of a physician. The word "injury" shall mean any injury, which requires the services of a physician. During any illness or injury, the parties shall have the right of reasonable visitation to the child in addition to their other rights provided herein. When the child is ill with the father, he assumes responsibility to take the child to the doctor and the same applies to the mother. In the event the other parent is unavailable to be informed, the supervising parent has full authorization to make medical decisions regarding the treatment of the child without the need for a signed release from the other parent. The parties agree that if either of them has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of the child then father or mother, as the case may be, will promptly notify the other, and both parties shall have unlimited visitation privileges, consistent with the circumstances, for so long as the situation pertains.
Each of the parties shall furnish the other copies of any reports from third parties concerning the health, education, or welfare of the child, including report cards or other correspondence from the child's school, CT Page 1129 with school instructions to send all such information to both parents, and complete information from any physician, dentist, psychologist, consultant, or any specialist attending to the child for any reason whatsoever, within a reasonable time after receipt thereof, and each shall have the right to require such reports from third persons.
Each parent shall be entitled to complete detailed information from any teacher, school or college and shall be entitled to be furnished with copies of all reports or records with respect to the child's education.
RELOCATION
In the event either party relocates more than 30 miles from their present location, the other party shall be notified in writing by certified mail at least 90 days before such event occurs so as to allow ample time to renegotiate the terms of the parenting plan or to allow the parties to return to court for determination as to what is in the child's best interests.
The child shall be allowed to attend St. Augustine parochial school for the 2001-2002 academic year.
Both parties shall take the Parenting Educational Program and produce proof of completion to the court within 90 days.
Neither party shall inflict corporal punishment upon the child.
The parties shall return to court on or about June 30, 2002 to report on the status of the custody and parental access rights and responsibilities described in this order.
BY THE COURT
____________________ John R. Caruso, J.